Next case. Case number 081196, People v. Peter Rallo. Please identify yourselves, step up, counsel. My name is Chris Kopasz. I represent the defendant Peter Rallo. Your last name again? Kopasz. Okay. Good morning, I'm Nancy Coletti, Assistant State's Attorney on behalf of the People. What is your name? Nancy Coletti. Okay. All right, you know the rules, 15 minutes aside. Thank you. May it please the court. As I said, my name is Christopher Kopasz, and I represent the defendant Peter Rallo. Today I'd like to start with Issue 1 in the brief, and time permitting, I'd like to speak briefly about Issue 2 as well. And I'd also like to reserve a couple of minutes for rebuttal. Peter Rallo was convicted of reckless driving, where the undisputed trial evidence showed that he was a type 1 diabetic, and he was suffering an unawareness hypoglycemic attack while driving his car. In its brief to this court, the State concedes that if Peter Rallo suffered an acute unawareness hypoglycemic attack, then there is no doubt that he lacked conscious awareness of what he was doing. I don't think you even have to get to that point. I want to get before it, about his behavior before. How can he be out there driving when he knows in his mind that he has this issue? And this issue has already occurred once in that year and at least two times earlier, which automatically puts him on notice that he has to do certain things. And he did not. Well, there is absolutely no evidence in this case that Peter Rallo ever suffered an unawareness hypoglycemic attack. I'm not saying unaware. I'm saying just an attack. Sure. You don't have to, 90% of the attacks are not unawareness attacks. Sure. 90% of them are people whose blood sugar goes down. Right. And then they have to get it back. Right, and that's a very, and as both And neither did your doctors or any of them in their testimony really lay out what the distinction of the two are. I disagree. I mean, Dr. Cerruco testified at trial to what an unawareness hypoglycemic attack is. He didn't go through the stages of the steps before going into it and the steps in it and the steps after. He didn't give me numbers. He didn't tell me what numbers bring you in or out of it, what this individual's, Rallo's, normal numbers were. What were his normal numbers? What were the numbers that he got to? And what on an average where would this guy be? These are the sort of questions the poor judge had to ask because to start with, the state didn't do their job in this case. They were really, they just blew it. And defense did okay, but he really didn't bring out a lot of good questions. So with that in mind, go ahead. Yeah, I'd like to respond to that. As an initial matter, it's the state's burden, it's always the state's burden to prove the elements of a crime beyond a reasonable doubt. And so here it would be the state's burden to prove the element of recklessness. And so you would have to have the state proving that Peter Rallo was on notice, that he had some condition that made it dangerous for him to drive. When was he not on notice? Well, no doctor ever testified that it was unsafe for him to drive. I mean, if you look at a case like Batz's before this court. No, but I'm saying even his own admissions say he was on notice. When he said, I'm going to eat. I disagree. When he says, I'm going to eat more. That alone is an indication that he now knows he has a problem. Well, no, every diabetic has to regulate their blood sugar 24-7. It's a balance, as Dr. Scirucco testified, it's a balance between your physical activity, the amount of insulin that you take, and the amount of food that you eat. And particularly for a type 1 diabetic, this is something that you're doing all of the time. And so it's not unusual for diabetics, particularly type 1 diabetics, to have isolated episodes of low blood sugar. And that's precisely what Peter Rallo was talking about when he said he had had incidents in the past where his blood sugar got low and he corrected it. And that's absolutely normal for diabetics. And the state here didn't present any evidence to show that, you know, Mr. Rallo had specific notice that it would be unsafe for him to drive. Like the specific notice in Batz's and Wilson and Schaefer. But those cases aren't, they're not the same type. It's epilepsy. Epilepsy and diabetes are two different things. Well, and then, again, we can go to the Forbes case. Again, it's not binding on this court, but it's a case out of Virginia, very similar, where the defendant was a diabetic and took steps to correct his blood sugar and nonetheless had a hypoglycemic attack while driving. Well, you say that it was the state's burden to prove this. It seems to me that the facts of the case, the evidence showed recklessness and switched the burden for the defense to show that he shouldn't be accountable, that it was not reckless, that it was the unawareness attack, which you endeavored to do through an expert. The judge, however, was not bound to believe everything that expert had to offer. Right. But, I mean, the judge had an expert opinion that was unrefuted. I mean, the state needs to- It doesn't mean he has to accept it. I mean, jurors all the time are free to accept or reject what an expert says, and the trial judge is surely in the same position. Right. But the expert's testimony here is that Peter Vallow suffered an unawareness hypoglycemic attack, and the evidence is entirely consistent with that. There's no- But it really wasn't conclusive based on what he said and what the medical literature says. It's not clear that he got-I mean, he said this was X attack, but he doesn't give the bases of his decision. And, if anything, that goes to the state's failure to prove recklessness beyond a reasonable doubt. I mean, the state has to prove that there's something that gives him notice that it's unsafe for him to drive. If what happened here- Every diabetic is on notice every day that he has to be aware to check himself so often. Correct. And then he has to make a decision. Now, again, going back, the record shows this gentleman had prior attacks. We don't know what kind because the record isn't clear. But we do know he had an attack prior in that year. So here you've got events that previously occurred that do put him on notice. If he's going to take a job that requires A, B, C, he's on notice. But he did not have notice of the particular type of an attack that would occur in this case. And, in fact, Peter Barlow took precautionary measures. I mean, he checked his insulin. Two and a half hours before. Correct. Right after lunch. Every half an hour maybe or more. But, I mean, the record-that's nowhere in the record, Your Honor. I mean, if that were true, the state should have to present some evidence to that effect to show that Peter Barlow was reckless. The problem that I'm having with it is-and let's just talk about the word unawareness. You keep talking here and in your brief you very eloquently talk about the fact that he had never had an unawareness hypoglycemic event before. But he was aware that that could happen, being a diabetic. Every diabetic is aware that that's a possibility. That's one of the reasons why they watch their sugar and watch the sugar level and watch what level of exercise and do the types of things to manage their sugar, right? Yes. And if a person suffers a normal episode of hypoglycemia, in fact, Barlow testified at one point, if his blood sugar got low, he wouldn't drive. But we're not talking about a case here where he's-let's say he's in his garage and he's working on his car and then he decides he's going to get in the car and before he decides to get in the car, he goes into an unawareness hypoglycemic event, gets in the car and starts driving. That's not the situation that we have here. Yeah, that's exactly-I mean, he said that he didn't recall leaving work that day. The next thing he remembers, he's waking up in an ambulance. I mean, there's absolutely no evidence that he knew before he got into the car that his blood sugar was low and that it would be unsafe for him to drive. So you're saying the lack of awareness here antedated him getting in and putting the keys into the car. Absolutely. And that's his testimony, and that's, again, unrefuted. And if the state is going to charge him with recklessness, it should be the state's burden to prove very specific evidence of recklessness because otherwise you're telling a large group of people with a very common medical condition that they shouldn't drive. Or you're giving them-I don't mean this churlishly-you're potentially giving a class of people license to just go out and drive whenever. And see, coming back, what he's just explained to you is where I say the judge is entitled to ask questions to clarify what the expert hedged on. Your expert hedged-well, not your expert, but the expert hedged. I disagree. And he hedged even in the judge's questioning. He did not give forthright, clear answers. He hedged on drawing the line again between where and what levels of blood would give X or Y. He hedged on what a person should have to do to bring his sugar level back to normal. I mean, I disagree that he hedged. I think what happened is, you know, Dr. Subruko wasn't able to test Peter Ballo's blood sugar throughout the entire episode. I mean, we only know his blood sugar from when he tested before lunch, when he was in the ambulance, and when he was tested again at the hospital. I mean, that's the evidence that we have to go on here. And to the extent that-and that leads into my second issue-to the extent that there were gaps in the State's evidence, that only points up the problem that the State failed to prove recklessness beyond a reasonable doubt here. Will you fault the court for engaging in cross-examination and impeachment of the doctor? It seems to me that in looking at the questions and answers posed by Judge Chambers, he was somewhat frustrated by the answers that were given. This doctor couldn't answer something yes or no. He went on to give explanations to argument that the effort was being made to clarify what type of simple and complex tasks that could be performed by a person who was suffering from this unawareness attack. And that's what he was endeavoring to do. You know, what they used to say about experts, and probably still do, is whose food I eat, his song I'll sing. And that's what you had here. You had somebody who was singing a song who was hired by the defense, as all experts are, hired by one side or the other. Correct. The judge simply was trying to clarify what he was saying. Well, I think what happened here-the problem is that the judge did more than seek to clarify. I mean, the judge undertook an examination that was half as long as the state's attorney's cross-examination and opened up new areas which the state's attorney hadn't discussed in its cross-examination. And so what the judge is doing there is taking on the role or assuming the role of a prosecutor, which is blatantly improper. And then not only did he seek to clarify, but by the end, he was really engaging in some unnecessary sarcasm, asking if, you know, what happened, if he's having an acute problem, if, you know, he's resisting the police, or if he's someone who doesn't think- Counsel, if a lawyer could do that in front of a jury, you know, accepting what you say, where's the harm in the judge acting skeptical in a bench trial? Are you saying that the judge did something wrong in that regard? Yeah, I mean, I think the defendant has, you know, both parties, in fact, have a due process right to an open-minded, impartial trial or effect. And when the judge takes on the role of a prosecutor in, you know, further cross-examining the witness, opening up new areas, the state- But neither party touched on what the judge was endeavoring to do. Both the defense that offered the witness and even the state in cross-examining didn't touch upon these simple and complex tasks that Judge Chambers was attempting to ferret out. And again, you know, it's the state's burden to prove recklessness here. The defendant presented an expert who testified, you know, undisputedly that what was going on here was an unawareness-type of lysemic attack. The state's attorney tried to cross-examine him, failed to, you know- Failed according to who? According to the judge, at the end of the proverbial day, the judge, after listening to the evidence, was not persuaded by the expert. The judge was not satisfied not only with what the expert hedged on, but he also was not satisfied with the way the expert arrived, going through allegedly, as you say, notice. I'm saying that the doctor hedged from the very start. He started with the absolute finish, that he has X-glycemia. And then he worked backwards. He didn't ever address what an individual is or is not to do to stay out of harm's way and protect other people on the street. He didn't say what he should do. He gave the general overall examples of what happens, but he didn't specify herein why was this guy right or wrong, when did he cross the line. I disagree. I mean, the judge testified that based on his medical history, you know, acute episodes like all diabetics do. And so based on that history, there was no reason for him not to be driving. And, you know, he also tested that, looking at his medical reports, Peter Rollo took a test, two different tests in the prior year, to test your long-term control over your diabetes. And those tests showed that he had good control. And so, again, I disagree that he didn't explain the reasoning for his opinion. I mean, I think he was very clear in going through his medical reports and showing that there was nothing at all to put Peter Rollo on notice that he shouldn't be driving. Counsel, you seem to be saying two things. You seem to be inferring that the state has some kind of a burden to put on an expert to prove this. They have a burden to prove recklessness. They have no burden to put an expert on to prove it, though. Fair enough. Fair enough. And then you say that if the defense is the only one that puts it on, the court is, therefore, required to accept what the expert says. Looking at the record here, I think the court could have looked at the prior incidents where the defendant could not remember certain aspects of what happened in some of those prior attacks and used that as a basis in the court's mind that he had noticed that this could happen. And our argument would be that, you know, that is recklessness, criminal recklessness for him to be doing so. You're making a special new rule for him. No, I absolutely disagree. I mean, I've cited cases in my brief. I think Batsis, a very recent case, very much points out the problem in this case. In Batsis, you had two doctors who testified at trial that they told the defendant that it was unsafe for him to be driving in light of his condition, that he had the common faint. There was none of that in this case whatsoever. The only expert who testified at trial said that it was unequivocally safe for him to drive. So does the state have a burden? The only way that they could prove a defendant in similar circumstances here, the only way to prove it is if they brought in a doctor who told the defendant, I told you not to drive? That would be one way to prove recklessness. That would make it easier, maybe, to defend it on appeal. But you're not saying they have that burden. They have the burden to prove recklessness. True, true, true. Are you saying that they have a burden to bring a doctor in to say, I told Mr. Jones, don't drive? That would be one way to do it. It's not required, though, is it? No, it's not required in the statute. But certainly it's required to show that it was criminally reckless for him to be driving a car. Again, one other thing I'd like to point out is that Rollo testified that he could not remember what happened when he left work. He could take a double taser and then keep on driving. Keep on driving? He was tasered twice and then kept fighting with the police. And Dr. Saruka testified that that's the case. So he's not functioning. Well, the issue is not functioning. The unawareness hypoglycemic attack. Well, see, again, I'm sorry. I shouldn't have asked you that question. Because from what happened is, like, irrelevant. What's relevant is what happened before he had the attack. And that's where the recklessness occurs. Now, that's what you have to show me he did something right. I'm saying he did nothing right. I'm saying that, yes, he took every precaution. I mean, the state has failed to show what precaution other than, you know, completely not driving. You know, the state hasn't showed what else he could have done. But he had good long-term control over his doctor. We don't know that factually. He said, and we know what the doctor said. That's the doctor's testimony from his medical report. That's evidence. And another thing, he goes to the doctor and tells the doctor, say, quarterly, I'm under control. No, I mean, he goes to the doctor and says, I'm under control. So the doctor's record says he's under control. No, but Dr. Scirucco cited the two tests that showed, I forget the name of the test, but if the level is under a 7, that shows good long-term control. And Peter Rollo both times in the year leading up to it tested at 6 point something. I mean, that's specific evidence that's in the record that shows that Peter Rollo had good long-term control over his diabetes. And that cannot put him on notice that it's unsafe for him to be driving. And on the day of, if he's regulating his physical activity, his insulin, and his food intake, as all diabetics are supposed to do, and he's never had a doctor tell him that it's unsafe to drive, there's absolutely no other precaution that he could have taken. I think you've used your time, if you want to save some for rebuttal. Yeah, thank you very much, Your Honor. State. Good morning, Your Honors. Good morning. Again, I'm Nancy Colletti. I think, first of all, most importantly to remember here is that driving is a privilege. It's not a right. And in this case, Mr. Rallo, the State proved beyond a reasonable doubt that the defendant was reckless in undertaking to drive that day. What counsel did not mention in his argument is a very important fact that was relied upon by the trial court in its finding, was that the defendant had worked that day only the second day of a new job in construction, which entailed him exerting strenuous physical labor in doing that job. And he testified himself that he knew that any type of physical activity, whether, and I tend to quote him, it was whether it be cardio, heavy lifting, et cetera, could cause him to have a hypoglycemic reaction. Additionally, I want to cite to the record at R-8, where the defendant testified regarding suffering his knowledge that he had suffered acute hypoglycemic reaction attacks in the past. And quote, he said, where he just totally lost any ability to rationally think and function. Later on, he testified that while those attacks were not frequent, where he could not remember anything that had occurred, they were not normal, and did not occur more than twice per year, he had already suffered one of those attacks in that same year. Those are all things that the court heard that testimony and took into consideration in finding that he was reckless in driving that day. Counsel, why should we not follow this Forbes case out of Virginia, which would appear to any observation to be, you know, even more dramatic on the facts here. And in that case, the appellate court reversed the conviction for involuntary manslaughter. I think that the very best reason why this court should not follow it is because it is not from this jurisdiction. This court is not bound by it. I don't think either side was able to find a case really on point in terms of diabetes, comparing it to whether it's narcolepsy or, you know, there's a case on sleep apnea. This diabetes case from Virginia would appear to be. But I think when you look at the facts that this defendant knew something was different that day. He didn't know how this new job, how this strenuous labor would affect him. But the defendant in the Virginia case testified that he felt a little woozy. He had had one beer, and he went to sleep for a while, and he had something to eat. And then before he left, he took a couple of mints and ate those mints and then drove, even after saying he felt woozy. And the court felt that, you know, there was not sufficient proof to convict him of reckless homicide and voluntary manslaughter, whatever the specific term was. I think when you look at what this court heard, and this court, as a rational trier of fact, decided that the evidence in this case did prove recklessness. And when you look at the facts and circumstances of this case, they show that, you know, okay, he testified. He tested his blood sugar that day. His testimony that he adjusted his food intake and his insulin intake shows even more that he was aware that he could have such a reaction that day because of his new job. I believe there was even testimony that because he knew he was working that new job that day, that's why he was doing these things. He was tinkering with his medication and with his food intake, but it wasn't enough. And, again, he was reckless in driving that day, not knowing what could happen, and knowing that these things had happened to him in the past, these types of attacks where he was totally unaware, according to him. Again, another very important point is that the trial court in this case never actually found that he had an unawareness, quote, unquote, unawareness hypoglycemic attack. The court found that he had an acute hypoglycemic reaction. And I think when you look at the other evidence in this case that showed that the defendant was functioning, and, again, Justice Fitzgerald-Smith, when you brought up the point about taking the taser wires out and jumping the fence, and the court was interested and needed to determine regarding Issue 2 whether these were simple or complex tasks, starting a car. He was able to get his keys out, turn on the ignition, start his car, put it into driving. Were those tasks that could be done by somebody who was having a, quote, unquote, unawareness attack. And in this case, the trial court did not find that it was one such unawareness attack. And, again, regarding Issue 2, we would first maintain our position that the defendant waived consideration of this issue. Defense counsel did not object to the court's actions at the time, nor did he raise it in his motion for a new trial. Additionally, counsel in this case, the defendant has not established that plain error occurred with respect to the court's questions in seeking to determine the truth in this case and how to weigh all of the evidence that it had heard. If you have no other questions, we would rest on, you know, stand on our brief and ask that you affirm the defendant's conviction for reckless driving. Thank you. Thank you. I'd like to address the State's argument that this was Peter Rallo's second day of his new job and that, therefore, the defendant didn't know how his job would affect him. Indeed, this was the second day of this particular job. But there's no evidence in the record that Rallo had never performed physical activity, had never exerted himself, had never engaged in this type of business. So the fact that it was his second day on the job is simply beside the point. I'd also, you know, as Justice Cheryl Smith mentioned, the issue here is really about notice. And so if the issue is about notice and what Peter Rallo should have known on that day, then whether or not the expert is credible on this simple versus complex task, you know, is sort of beside the point. There was no evidence, no specific evidence, as in all the other cases cited in our brief, no specific evidence that Rallo knew or should have known that it would be unsafe for him to drive. And, again, you know, pointing to the expert's unrefuted testimony, as this court recently decided in Kando, a case about an insanity case dealing with an expert witness, the court there made the point that the trial court cannot just simply draw different conclusions from the testimony of an otherwise credible or unimpeached witness. And that's what we have here. Dr. Scirucco's testimony is completely credible. He gave reasons for his testimony. I disagree that he didn't take the judge through the steps. You know, certainly in the judge's questioning, he walked through and said, you know, from start to finish, starting the car is a simple task. Driving down the first street, turning. I was only limiting that to the point of the judge, not so going after. Sure. So Dr. Scirucco, you know, certainly went through Rallo's medical history. He went through the difference between unawareness hypoglycemia and ordinary hypoglycemia and then explained what happened on that day. And I'd also like to point out to the court, unawareness hypoglycemia is very unique in that the defendant or the diabetic person is unaware that his blood sugar has dropped and so he can't correct it. And so it's a very particular type of hypoglycemia of which there is absolutely no evidence that he ever suffered anything in the past. When he testified that he lost the ability to rationally think and function, that is entirely consistent with an ordinary hypoglycemic episode. As Dr. Scirucco said, you can have a variety of functions. The issue is that you recognize that you're low and you can take steps to correct it. And that's what Peter Rallo said that he did in all those instances. What standard are we to judge what the trial judge did here? Are we supposed to, in order to overturn his conviction, say that no rational trier effect would have come to the conclusion that he did? As we said in our brief, you can look at this de novo, whether or not it meets the legal definition of recklessness, or you can use the standard that you described, whether a rational trier effect could find recklessness. Tell us why we should be persuaded that you're on the right side of that argument. On the standard of review? On the second, not the de novo, but rather the no rational trier effect standard. Right. And looking at, again, some of the other case law dealing with driving, medical conditions that occur while driving, the defendant always had notice, very specific notice,  Here, absolutely no rational trier effect can pull anything from the record other than the fact that he's had low blood sugar in the past. Nothing specific in the record showed that it would be unsafe for him to drive. And where there's no specific evidence in the record, the state simply failed to meet its burden of proof here, and so no rational trier effect could conclude that he was reckless in this case. Thank you. And if this Court has no further questions, I'd ask that you reverse Pico-Rallo's conviction for reckless driving, or in the alternative, reverse and remand for a new trial. Thank you. Thank you. The matter will be taken under advisement. The Court will stand and recess. It was very enjoyable.